**NOT FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN VAN CUREN, as Trustee and Plan Administrator of the Chapter 11 Estate of Michael Hat, f/k/a Michael Hat Farming Company,<br><br>        Plaintiff - Appellant,<br><br>  v.<br><br>FEDERAL CROP INSURANCE CORPORATION and RISK MANAGEMENT AGENCY,<br><br>        Defendants - Appellees. | No. 14-15855<br><br>D.C. No. 3:13-cv-04601-CRB<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted April 11, 2016
San Francisco, California

Before: THOMAS, Chief Judge and REINHARDT and CHRISTEN, Circuit Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

John Van Curen, chapter 11 bankruptcy trustee ("trustee") for Michael Hat ("debtor"), appeals the district court's order granting the Federal Crop Insurance Corporation's ("FCIC") motion to dismiss or, in the alternative, motion for summary judgment. The trustee sought to enforce a decision by the National Appeals Division of the United States Department of Agriculture reversing prior decisions of the United States Department of Agriculture's Risk Management Agency ("RMA") and awarding the bankruptcy estate insurance proceeds from claims made by the debtor on a crop insurance policy with American Growers Insurance Company ("AGIC"), which was reinsured by FCIC. We reverse. Because the parties are familiar with the complex history of this case, we need not recount it here, except as necessary to explain our decision.

I

The district court erred in dismissing the action for lack of subject matter jurisdiction. The court relied on the trustee's decision not to seek arbitration within the time limits provided in the relevant crop insurance policy prior to seeking administrative review. It reasoned that the time limitations contained in the crop insurance policy at issue, read in conjunction with 7 U.S.C. § 1508(j)(2)(B), imposed a non-waivable jurisdictional bar precluding a suit against the government.

2

Statutes limit a court's jurisdiction when they govern a court's adjudicatory capacity. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). The Supreme Court has instructed that "claim-processing rules" ordinarily do not create jurisdictional bars. *Id.* As the Supreme Court explained, these "rules . . . seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* It noted that "[f]iling deadlines . . . are quintessential claim-processing rules." *Id.*

Congress is, of course, free to attach to such rules "the conditions that go with the jurisdictional label." *Id.* However, there must be a "'clear' indication that Congress wanted the rule to be 'jurisdictional.'" *Id.* at 436 (*quoting Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006)). Congress need not "incant magic words" to signal the jurisdictional effect of a limitations statute. *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015). Courts instead may review a statute's text, context and interpretive history to determine "whether a statute ranks a requirement as jurisdictional." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166-68 (2010); *see also Kwai Fun Wong*, 135 S. Ct. at 1632 (approving use of "traditional tools of statutory construction" in jurisdictional inquiry).

The statute in question, 7 U.S.C. § 1508(j)(2)(B), is not a jurisdictional limitations statute. First, the text does not define or limit a reviewing court's

3

"adjudicatory capacity." *Henderson*, 562 U.S. at 435. The provision identifies neither the "classes of cases" nor the "persons" subject to the district court's "adjudicatory authority." *Reed Elsevier*, 559 U.S. at 160-61. Second, no long history of Section 1508 jurisprudence compels the conclusion that the provision has jurisdictional effect. *Cf. John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008) (describing 100-year-old line of decisions holding that Court of Federal Claims limitations statute had jurisdictional effect), *Bowles v. Russell*, 551 U.S. 205, 210 (2007) (describing "consisten[t] . . . holdings" on question whether 28 U.S.C. § 2107 had jurisdictional effect). Neither the Supreme Court nor our court has ruled on the question whether 7 U.S.C. § 1508(j)(2)(B) has jurisdictional effect.

Rather, § 1508(j)(2)(B) is the "quintessential claim-processing rule[]." *Henderson*, 562 U.S. at 435. The limitations statute appears within a paragraph entitled, "[c]laims for losses," and prefaced with the language, "[u]nder rules prescribed by the Corporation, the Corporation may provide for adjustment and payment of claims . . . ." *See* 7 U.S.C. § 1508(j)(1). The lack of jurisdictional effect is especially evident in this context, where the alleged failure to file a claim stems not from regulation or statute, but from a private contract of insurance.

4

The district court also erred in its alternative holding that the trustee's indemnity claims were time-barred. The court concluded that the trustee's failure to seek arbitration within the 12-month period required by the crop insurance policy precluded the trustee from recovering from the agency. However, the arbitration required by the policy and the federal administrative agency actions were two entirely separate processes. Therefore, the trustee's decision not to seek arbitration did not preclude an administrative award from the agency.

In this case, the agency elected to participate, and adjust the crop insurance claim, which was its right. That adjustment followed an agreement between RMA and the Nebraska Department of Insurance, which assumed supervisory control over AGIC. Under the agreement, RMA, acting on behalf of FCIC, would guarantee AGIC's insurance policies if it were liquidated. A Nebraska state court entered an order authorizing the Nebraska Department of Insurance to liquidate AGIC and enjoining any "actions at law or in equity or in arbitration" against AGIC. The liquidator sent notice to policy holders informing them that RMA would assume control over federally reinsured policies. The trustee and the liquidator ultimately reached a stipulation whereby the estate's insurance claims would be deemed denied by the liquidator, with the trustee retaining the right to

pursue the claims with RMA. The trustee pursued the claims with RMA, which denied the claims and requested that the estate refund monies paid by AGIC. After mediation, the case was reopened, and a second RMA decision was issued again denying the trustee's claims and seeking repayment. The trustee appealed the second RMA decision to the National Appeals Division of the United States Department of Agriculture. The National Appeals Division ultimately determined that RMA had erroneously denied the claims, and that it owed the estate approximately an additional $2.3 million.

The agency's authority over the trustee's claims derives from the Standard Reinsurance Agreement ("SRA") between the agency and AGIC. That agreement includes (1) a "cut-through" provision that "transferred to FCIC" all "eligible crop insurance contracts affected" by the Nebraska court's 2005 liquidation order, and (2) a January 2003 amendment that "assign[ed] to FCIC all of [AGIC's] rights of action to recover any funds improperly paid under any eligible crop insurance contract[.]"

Those SRA provisions effected a guarantee contained in the policy's preamble: that the trustee's claim would be "settled in accordance with the provisions of this policy and paid by FCIC" if the insurer could not pay the trustee's loss. *Cf. Olsen v. United States*, 665 F. Supp. 2d 1225, 1230 (E.D. Wash.

6

2009) ("*Olsen II*") ("FCIC thereafter acquired the authority to administer the policy in accordance with its terms."). Multiple policy provisions structured indemnity determinations. *See, e.g.*, ¶ 3(d) (reserving right to revise indemnities paid based on inaccurate production guarantees); ¶ 6(e) (reserving right to determine indemnities based on submitted acreage reports); ¶ 14 (*Our Duties*) ("We recognize and apply the loss adjustment procedures established or approved by the [FCIC]."). Indeed, the agency's April 2010 and May 2011 determinations cited to some of these and to other policy provisions to adjust the trustee's losses. Those determinations, made by "employee[s] . . . of the Agency" denied "program benefits" to the trustee. *See* 7 C.F.R. § 400.90 (2016). The determinations therefore amounted to "adverse decision[s]" subject to exclusive and unconditional administrative relief under applicable federal regulations. *See* 7 C.F.R. § 400.90 (2016) *et seq*.

The National Appeals Division confirmed the separate administrative and arbitration procedures in its decision, noting that under 7 C.F.R. § 11.1, it was "unable to adjudicate disputes between a participant and an insurance provider."[1]

The agency presents no authority for the agency's contrary proposition: that the administrative and judicial review provisions of 7 C.F.R. Parts 11 and 400 do not attach to an adverse decision made by RMA following an assignment in liquidation. Instead, salient authority points the other direction: multiple regulatory and contractual provisions make plain that any principles of state law—including those regarding assignment—do not apply to federal crop insurance policies when inconsistent with the "purpose, intent, or authority of the [Federal Crop Insurance Act]." 7 C.F.R. § 400.351 (2016). Accordingly, any interpretation of state law that encumbers "actions authorized by [7 C.F.R. Part 400]"—including the trustee's rights to the administrative and judicial relief contemplated by Subpart J— cannot stand. *See* 7 C.F.R. § 400.352 (2016).

---

[1] The National Appeals Division rejected RMA's argument that the claims were time-barred as "convoluted," noting that, on one hand, RMA was claiming the right to require higher refunds on the claims from the trustee but, on the other hand, the trustee was precluded from arguing for claim restoration. It further concluded that there was "nothing in the regulations or handbooks preventing [the trustee] from arguing that, not only is the RMA decision seeking $2.4 million from [the trustee] erroneous, but RMA also owes [the trustee] additional indemnities because RMA incorrectly adjusted the claims."

8

Indeed, that was the agency's position during the *Olsen* litigation, in which it successfully contended that the arbitration provisions in a similar contract had no bearing on the administrative process, and that the arbitrator's award could not be enforced against the agency. *See Olsen v. U.S. ex rel. U.S. Dep't of Agric.*, 546 F. Supp. 2d 1122, 1126 (E.D. Wash. 2008) ("*Olsen I*").

In the final analysis, this appeal is confined to agency action. The claims against AGIC were settled with the state liquidator, which agreed that the claims could proceed before the agency in accordance with the liquidator's memorandum of understanding with the agency. The RMA made two determinations.[2] The trustee administratively appealed to the National Appeals Division, which issued a final opinion. The trustee was entitled to seek judicial review of that determination within one year. *See* 7 C.F.R. § 11.13(b) (2016); 7 U.S.C. § 1508(j)(2)(B). In this unusual circumstance, the trustee is not appealing the decision, but asking the court to enforce it. Regardless, the trustee timely filed his complaint on October 4, 2013, less than one year after either the December 2012 Director Review Determination or the agency's January 2013 implementation letter.

III

---

[2] We need not decide whether the RMA could have initially rejected Van Curen's claim as untimely. Once it decided to adjust the claim and seek additional funds from the estate, it waived any time bar.

In sum, we reverse the district court's dismissal of the action based on lack of jurisdiction and its alternative grant of summary judgment. Given our resolution of the issues, we need not, and do not, reach any other issue urged by the parties.

**REVERSED.**